IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANIAK PINE & GANNON, LLC, an Illinois limited liability company, VALAUSKAS & PINE LLC, an Illinois limited liability company, and McDONNELL BOEHNEN HULBERT & BERGHOFF LLP, an Illinois limited liability partnership,<br><br>    Plaintiffs,<br><br> v.<br><br>NEOMEDIA TECHNOLOGIES, INC., a Delaware corporation, and GEORGE O'LEARY, an individual,<br><br>    Defendants. | Civil Action No.<br><br>Judge |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

NOW COME Plaintiffs, Baniak Pine & Gannon, LLC, Valauskas & Pine LLC, and McDonnell Boehnen Hulbert & Berghoff LLP, by and through their attorneys, and complain of Defendants, NeoMedia Technologies, Inc., and George O'Leary, as follows:

**OVERVIEW, JURISDICTION AND VENUE**

1. This is an action for, *inter alia*, bad faith breaches of contracts by NeoMedia Technologies, Inc. This is also an action for tortious interference with those contracts and business relationships by George O'Leary. The Plaintiff law firms seek preliminary and permanent injunctions for the preservation of earned contingent and licensing fees wrongfully withheld from them, the imposition of a constructive trust upon those funds, and a full accounting of all fees to which they are entitled. This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Venue lies in this District

under 28 U.S.C. §1391(a)(2), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Illinois.

**PARTIES**

2. Plaintiff, Baniak Pine & Gannon, LLC ("BPG"), an Illinois limited liability company, was a law firm specializing in intellectual property rights, including patents, trademarks, and copyrights. BPG is organized and exists under the laws of the State of Illinois, having had a principal place of business at 150 North Wacker Drive, Chicago, Illinois 60606.

3. Plaintiff, Valauskas & Pine, LLC ("VP"), an Illinois limited liability company, was a law firm specializing in intellectual property rights, including patents, trademarks, and copyrights. VP is organized and exists under the laws of the State of Illinois, having had a principal place of business at 150 South Wacker Drive, Chicago, Illinois 60606.

4. Plaintiff, McDonnell Boehnen Hulbert & Berghoff LLP ("MBHB"), an Illinois limited liability partnership, is a law firm specializing in intellectual property rights, including patents, trademarks, and copyrights. MBHB is organized and exists under the laws of the State of Illinois, having a principal place of business at 300 South Wacker Drive, Chicago, Illinois 60606.

5. Defendant, NeoMedia Technologies, Inc. ("NeoMedia"), is a Delaware corporation with its headquarters and principal place of business located at Two Concourse Parkway, Suite 500, Atlanta, Georgia. NeoMedia promotes itself as "the innovator and global market leader in 2D mobile barcode technology and infrastructure solutions, harnessing the power of the mobile phone in a whole new way to transform traditional communications into a multi-media experience."

6. Since at least as early as 2000, NeoMedia has been, and upon information and belief continues to be, the owner of numerous United Sates and foreign patents (the "NeoMedia Patents").

7. Defendant, George O'Leary ("O'Leary"), at all relevant times a director of NeoMedia, is upon information and belief a citizen of Florida.

### PLAINTIFFS' AGREEMENTS WITH, EARLIER WORK FOR, AND COURSE OF DEALING WITH NEOMEDIA

8. In or around 2001, Plaintiff BPG met with Charles Fritz ("Fritz"), then the CEO of NeoMedia, and discussed a relationship in which BPG would represent NeoMedia for licensing NeoMedia's intellectual property, and to the extent necessary, file patent infringement lawsuits against parties infringing NeoMedia's intellectual property. In or about January 2002, BPG and NeoMedia agreed to terms and entered into a written engagement agreement (the "2002 BPG Agreement"), in which BPG was retained as counsel to assist in the licensing and litigation of the NeoMedia Patents. In the 2002 BPG Agreement, a copy of which is attached hereto as **Exhibit A**, the parties agreed, *inter alia*, that all "proceeds (defined as income or benefits received from third parties in connection with licensing NeoMedia's patent rights) would be made payable to [BPG], and [BPG] would then forward the entire share of NeoMedia's proceeds to NeoMedia directly …."

9. At or about the time the parties entered into the 2002 BPG Agreement, NeoMedia requested an amendment to clarify a provision thereof (the "2002 BPG Amendment"), to which BPG agreed. In the 2002 BPG Amendment, a copy of which is attached hereto as **Exhibit B**, BPG agreed, *inter alia*, to promptly forward to NeoMedia its share of all licensing proceeds received by BPG under the 2002 BPG Agreement.

10. In or around May 2002, pursuant to the contingent fee arrangement contained in the parties' 2002 BPG Agreement, with BPG representing NeoMedia, NeoMedia entered into a licensing agreement with BrandKey, Inc. ("BrandKey") under the NeoMedia Patents (the "BrandKey Agreement"). BPG has received proceeds from the BrandKey Agreement consistent with the 2002 BPG Agreement, without dispute or interference by NeoMedia.

11. In or around January 2004, pursuant to the contingent fee arrangement contained in the parties' 2002 BPG Agreement, BPG filed a patent infringement lawsuit on behalf of NeoMedia against Virgin, Inc., Virgin Megastore, Virgin Online (collectively "Virgin") in the Northern District of Illinois (case no. 04 CV 00021), alleging that Virgin was infringing the NeoMedia Patents (the "Virgin Lawsuit"). Virgin settled with NeoMedia and has since gone out of business. BPG has received proceeds from the Virgin settlement consistent with the parties' 2002 BPG Agreement, without dispute or interference by NeoMedia.

12. In or around May 2004, pursuant to the contingent fee arrangement contained in the parties' 2002 BPG Agreement, BPG filed a patent infringement lawsuit on behalf of NeoMedia against LScan, Inc. ("LScan") in the Eastern District of Pennsylvania (case no. 04 CV 2307), alleging that LScan was infringing the NeoMedia Patents (the "LScan Lawsuit"). BPG obtained a default judgment against LScan and LScan discontinued operations.

13. In or around April 2004, pursuant to the contingent fee arrangement contained in the parties' 2002 BPG Agreement, BPG filed a patent infringement lawsuit on behalf of NeoMedia against AirClic, Inc. ("AirClic") in the Eastern District of Pennsylvania (case no. 04 CV 1692), alleging that AirClic was infringing the NeoMedia Patents (the "AirClic Lawsuit"). BPG obtained a favorable settlement of the AirClic Lawsuit for NeoMedia. BPG has received

proceeds from the AirClic settlement consistent with the parties' 2002 BPG Agreement, without dispute or interference by NeoMedia.

### THE SCANBUY AND MARSHALL LAWSUITS AND SETTLEMENT

14. In or around April 2004, pursuant to the contingent fee arrangement contained in the parties' 2002 BPG Agreement, BPG filed a patent infringement lawsuit on behalf of NeoMedia against ScanBuy, Inc. ("ScanBuy"), in the Southern District of New York (case no. 04 CV 03026), alleging that ScanBuy was infringing the NeoMedia Patents (the "ScanBuy Lawsuit").

15. In or around February 2007, NeoMedia's O'Leary and Fritz came to Chicago, met with Plaintiffs' principals, and reaffirmed NeoMedia's intention to continue working with the BPG attorneys under the terms of the parties' 2002 BPG Agreement. By that time, Plaintiffs' principals had ceased practicing law through BPG, and had begun practicing through VP and MBHB. O'Leary and Fritz agreed that VP and MBHB would continue to represent NeoMedia in the ScanBuy Lawsuit, and ratified all other particulars of the parties' 2002 BPG Agreement.

16. In or around November 2008, ScanBuy along with Marshall Feature Recognition, Inc. ("Marshall") filed a patent infringement lawsuit against NeoMedia in the Eastern District of Texas (case no. 08 CV 199) (the "Marshall Lawsuit").

17. NeoMedia acknowledged to and agreed with Plaintiffs that the Marshall Lawsuit was not covered by the parties' 2002 BPG Agreement. Thus, NeoMedia entered into a separate written agreement with Plaintiff VP (the "2009 VP Agreement" – **Exhibit C** hereto), in which VP was retained as counsel to represent NeoMedia in the Marshall Lawsuit on a fee basis. Defendant NeoMedia likewise entered into a separate written agreement with Plaintiff MBHB (the "2009 MBHB Agreement" – **Exhibit D** hereto), in which MBHB was also retained as

counsel to represent NeoMedia in the Marshall Lawsuit on a fee basis. Similar to their co-counsel relationship in the ScanBuy Lawsuit, Plaintiffs MBHB and VP thus served as litigation co-counsel for NeoMedia in the Marshall Lawsuit.

18. On or about October 16, 2009, by and through VP and MBHB as counsel, NeoMedia and ScanBuy entered into a written settlement agreement (the "ScanBuy Settlement"), thereby resolving and terminating both the ScanBuy Lawsuit and the Marshall Lawsuit on terms favorable to NeoMedia, including but not limited to the payment of license fees and royalties ("proceeds" under the parties' 2002 BPG Agreement; hereinafter, "Proceeds") to NeoMedia. Pursuant to the parties' 2002 BPG Agreement, Plaintiffs are entitled to 45% of all Proceeds obtained pursuant to the ScanBuy Settlement. (In order to protect confidential information, at this time Plaintiffs are not attaching the ScanBuy Settlement as an exhibit hereto.)

### NEOMEDIA'S WRONGFUL APPROPRIATION OF PLAINTIFFS' SHARE OF THE SCANBUY SETTLEMENT PROCEEDS

19. NeoMedia has admitted and acknowledged to Plaintiffs that it has received Proceeds from the ScanBuy Settlement, and has admitted that Plaintiffs are entitled to the stated share under the parties' 2002 BPG Agreement (**Exhibit A** hereto), but has withheld same without any legitimate justification. Moreover, notwithstanding the provision in the parties' 2002 BPG Agreement that all "proceeds (defined as income or benefits received from third parties in connection with licensing NeoMedia's patent rights) would be made payable to [BPG], and [BPG] would then forward the entire share of NeoMedia's proceeds to NeoMedia directly," NeoMedia – without Plaintiffs' prior knowledge or approval -- obtained ScanBuy's agreement in the ScanBuy Settlement to pay Proceeds directly to NeoMedia, thus enabling

NeoMedia to exploit its position of superiority over Plaintiffs, and wrongfully and without justification divert, withhold and appropriate to itself Plaintiffs' Proceeds shares.

### THE MARSHALL LAWSUIT FEES

20. Besides the contingent fee Proceeds due and owing Plaintiffs from the ScanBuy Settlement, NeoMedia continues to owe VP and MBHB sums billed by them pursuant to the 2009 VP and MBHB Agreements relating to the Marshall Lawsuit. While admitting and acknowledging to Plaintiffs that these fee-based sums are due and owing to them, and despite having paid Plaintiffs' hourly fee bills earlier in the Marshall Lawsuit, NeoMedia has likewise refused to pay Plaintiffs' later bills, without any legitimate justification.

21. NeoMedia paid VP for fee-based services rendered in the Marshall Lawsuit up to approximately September 2009. To date, NeoMedia still owes VP at least $51,169.57 for services rendered, plus ongoing interest and reasonable attorneys' fees, in accordance with the 2009 VP Agreement. NeoMedia has failed to provide any legitimate justification for withholding these sums due to VP.

22. NeoMedia paid MBHB for fee-based services rendered in the Marshall Lawsuit up to approximately September 2009. To date, NeoMedia still owes MBHB at least $34,287.63 for services rendered, plus interest and reasonable attorneys' fees, in accordance with the 2009 MBHB Agreement. NeoMedia has failed to provide any legitimate justification for withholding these sums due to MBHB.

### NEOMEDIA'S WRONGFUL APPROPRIATION OF PLAINTIFFS' SHARE OF THE MOBILE TAG, BEMS AND NEUSTAR AGREEMENTS

23. In or around July 2009, with VP and MBHB representing NeoMedia, and involved in, *inter alia*, drafting and negotiating, NeoMedia entered into a licensing agreement with Mobile Tag, Inc., under the NeoMedia Patents (the "Mobile Tag Agreement"). (In order

to protect confidential information, at this time Plaintiffs are not attaching the Mobile Tag Agreement as an exhibit hereto.)

24. In or around October 2009, with VP and MBHB representing NeoMedia, and involved in, *inter alia*, drafting and negotiating, NeoMedia entered into a licensing agreement with BEMS, Inc., under the NeoMedia Patents (the "BEMS Agreement"). (In order to protect confidential information, at this time Plaintiffs are not attaching the BEMS Agreement as an exhibit hereto.)

25. In or around October 2009, with VP and MBHB representing NeoMedia, and involved in, *inter alia*, drafting and negotiating, NeoMedia entered into a licensing agreement with Neustar, Inc., under the NeoMedia Patents (the "Neustar Agreement"). (In order to protect confidential information, at this time Plaintiffs are not attaching the Neustar Agreement as an exhibit hereto.)

26. Pursuant to the parties' 2002 BPG Agreement (**Exhibit A** hereto), Plaintiffs are entitled to at least 25% of the proceeds of the Mobile Tag, BEMS and Neustar Agreements (hereinafter, also "Proceeds"). NeoMedia has failed to provide any legitimate reason for withholding these sums due to Plaintiffs.

27. Defendants' withholding of Plaintiffs' rightful Mobile Tag, BEMS and Neustar Proceeds shares and fees has been unreasonable and vexatious, and entitles Plaintiffs to an award of prejudgment interest thereon.

### COUNT I
### INJUNCTION, SPECIFIC PERFORMANCE, ACCOUNTING, CONSTRUCTIVE TRUST

28. Plaintiffs repeat and reallege paragraphs 1 – 27 above as if fully set forth herein.

29. On or around November 2, 2009, when Plaintiffs asked why NeoMedia was not making the Proceeds and fee payments due and owing to Plaintiffs, and demanded payment of same, Mike Zima ("Zima"), NeoMedia's CFO, stated that O'Leary had instructed NeoMedia to "hold the money hostage" until Plaintiffs agreed to amend the 2002 BPG Agreement in accordance with NeoMedia's demands. Mr. Zima provided no other reason for withholding payment to Plaintiffs and stated that the payments were owed and due to be paid.

30. On information and belief, O'Leary acted for his own interest and benefit in issuing the instruction to Zima to "hold the money hostage," and directing Zima and NeoMedia not to remit to Plaintiffs their earned fees and rightful shares of the Proceeds under the ScanBuy Settlement, and the Mobile Tag, BEMS and Neustar Agreements (collectively, the "License Agreements").

31. At great risk, time and expense, Plaintiffs obtained significant revenue streams for NeoMedia and themselves under the terms of the License Agreements, all pursuant to, *inter alia*, the express safeguard contained in the parties' 2002 BPG Agreement that the Proceeds therefrom would be paid directly to the Plaintiff attorneys, who would deduct their shares and then promptly distribute the remainder to NeoMedia.

32. Law, equity and good conscience dictate that NeoMedia should be prevented from continuing to bypass and violate the parties' express safeguard, and unjustifiably retain Plaintiffs' rightful Proceeds shares. Therefore, the Court should restore the parties to their original agreed arrangement for the receipt and distribution of Proceeds, and order that NeoMedia direct all parties to all License Agreements procured by or with Plaintiffs' assistance pursuant to the 2002 BPG Agreement to pay Proceeds therefrom directly to Plaintiffs for the duration of those License Agreements.

33. Though NeoMedia has refused Plaintiffs' numerous demands to account for all Proceeds received and pay over Plaintiffs' rightful shares, Plaintiffs estimate that the amount of uncompensated services they have thus far rendered to NeoMedia pursuant to the parties' 2002 BPG Agreement, and subsequent agreements, is currently in excess of 1.75 million dollars ($1,750,000), and that NeoMedia will additionally continue to receive benefits and Proceeds far in excess of this amount in the form of future payments and royalties which the aforementioned ScanBuy and other Agreements will provide.

34. Absent restoration of the parties' last agreed status quo as embodied in their 2002 BPG Agreement, Plaintiffs stand at great and ongoing risk that the Proceeds of their significant service investment will be unjustifiably dissipated by NeoMedia, and that they will be unable to fully recover same.

WHEREFORE, Plaintiffs pray:

A. That the Court preliminarily and permanently enjoin Defendants to comply with the payment provision of their 2002 BPG Agreement, and direct all parties to all License Agreements procured by or with Plaintiffs' assistance pursuant to the parties' 2002 BPG Agreement to pay Proceeds therefrom directly to Plaintiffs for the duration of those License Agreements;

B. That the Court compel Defendants to fully account to Plaintiffs for all Proceeds thus far received by them pursuant to all License Agreements procured by or with Plaintiffs' assistance pursuant to the parties' 2002 BPG Agreement;

C. That the Court impose a constructive trust upon Plaintiffs' rightful shares of all Proceeds wrongfully retained by Defendants, and all interest, proceeds and other return which was or could have reasonably been earned thereon, and direct

    Defendants to pay same into the registry of the Court pending the entry of final judgment in this case; and

D. That Plaintiffs be awarded all compensation, costs, prejudgment interest, reasonable attorneys' fees and other relief to which they may be entitled.

## COUNT II
### TORTIOUS INTERFERENCE WITH CONTRACT – 2002 BPG AGREEMENT

35. Plaintiffs repeat and reallege paragraphs 1 – 34 above as if fully set forth herein.

36. O'Leary acted willfully and without right, justification or privilege in directing NeoMedia to "hold [Plaintiffs'] money hostage." He thereby intended to and did unjustifiably induce a breach of the parties' 2002 BPG Agreement.

37. In the alternative, O'Leary acted maliciously and without right, justification or privilege in directing NeoMedia to "hold [Plaintiffs'] money hostage." He thereby intended to and did harm Plaintiffs by unjustifiably inducing a breach of the parties' 2002 BPG Agreement.

38. Plaintiffs are entitled to an appropriate award of punitive damages.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor, and against Defendant O'Leary, in an amount to be determined in excess of $1,750,000 and commensurate with the stated shares set forth in the aforementioned ScanBuy and other Agreements, and that Plaintiffs be awarded appropriate punitive damages plus their costs, prejudgment interest, reasonable attorneys' fees, and all other relief to which they may be entitled.

## COUNT III
### BREACH OF CONTRACT – 2002 BPG AGREEMENT

39. Plaintiffs repeat and re-allege paragraphs 1 - 38 above as if fully set forth herein.

40. Plaintiffs have performed legal services for and incurred expenses on behalf of Defendant NeoMedia at NeoMedia's specific request and direction on a contingency basis pursuant to the 2002 BPG Agreement.

41. Based upon their review of the License Agreements, Plaintiffs estimate and believe that their rightful share of the Proceeds NeoMedia has thus far received exceeds $1,750,000.

42. Despite repeated demands, Defendant NeoMedia has failed and refused to account for and pay Plaintiffs all Proceeds owed under the 2002 BPG Agreement.

WHEREFORE, Plaintiffs pray that the Court compel Defendants to fully account to Plaintiffs for all Proceeds thus far received by them pursuant to all License Agreements procured by or with Plaintiffs' assistance pursuant to the parties' 2002 BPG Agreement, and that judgment be entered in Plaintiffs' favor, and against Defendant NeoMedia, in an amount to be determined by the proofs commensurate with the stated shares set forth in the aforementioned ScanBuy and other Agreements, but not less than $1,750,000, plus interest, costs, and all other relief to which it may be entitled.

### COUNT IV
### BREACH OF THE 2009 VP AGREEMENT

43. Plaintiffs repeat and re-allege paragraphs 1 - 42 above as if fully set forth herein.

44. VP, through its employees, performed valuable legal services for and incurred expenses on behalf of Defendant NeoMedia at NeoMedia's specific request and direction on the Marshall Lawsuit.

45. Pursuant to the VP Agreement, Defendant NeoMedia agreed to pay VP for the legal services performed for the Marshall Lawsuit on an hourly basis and pursuant to the hourly

billable rate chargeable for the individual employees of VP. NeoMedia also agreed to reimburse VP for its expenses and disbursements incurred and made/or liability incurred therefor, on NeoMedia's behalf.

46. NeoMedia currently owes VP for unpaid services and expenses of at least $51,169.57. A true and correct copy of VP's current statement of past-due account of Defendant NeoMedia is attached hereto, incorporated by reference, and marked **Exhibit E**.

47. Pursuant to the parties' 2009 VP Agreement, VP is entitled to interest and an award of its reasonable attorneys' fees.

WHEREFORE, Plaintiff VP prays that judgment be entered in its favor, and against Defendant NeoMedia, in at least the amount of $51,169.57, plus ongoing interest, costs, reasonable attorneys' fees, and all other relief to which it may be entitled.

### COUNT V
### BREACH OF THE 2009 MBHB AGREEMENT

48. Plaintiffs repeat and re-allege paragraphs 1 – 47 above as if fully set forth herein.

49. MBHB, through its employees, performed valuable legal services for and incurred expenses on behalf of Defendant NeoMedia at NeoMedia's specific request and direction on the Marshall Lawsuit.

50. Pursuant to the MBHB Agreement, Defendant NeoMedia agreed to pay MBHB for the legal services performed for the Marshall Lawsuit on an hourly basis and pursuant to the hourly billable rate chargeable for the individual employees of MBHB. NeoMedia also agreed to reimburse MBHB for its expenses and disbursements incurred and made and/or liability incurred therefore, on NeoMedia's behalf.

51. NeoMedia currently owes MBHB for unpaid services and expenses of $34,287.63. A true and correct copy of MBHB's past-due statement of account of Defendant NeoMedia is attached hereto, incorporated by reference, and marked **Exhibit F**.

52. Pursuant to the parties' 2009 MBHB Agreement, MBHB is entitled to interest and an award of its reasonable attorneys' fees.

WHEREFORE, Plaintiff MBHB prays that judgment be entered in its favor, and against Defendant NeoMedia, in at least the amount of $34,287.63, plus interest, costs, reasonable attorneys' fees, and all other relief to which it may be entitled.

Respectfully submitted,

Dated: February 18, 2011.

*/s/ William B. Kohn*

Attorneys for Plaintiffs
Baniak Pine & Gannon, LLC
Valauskas & Pine, LLC, and
McDonnell Boehnen Hulbert & Berghoff LLP

William B. Kohn (ARDC No. 6196142)
LAW OFFICES OF WILLIAM B. KOHN
150 North Wacker Drive
Suite 1400
Chicago, IL 60606
312/553-1200
Fax: 312/553-1733
kohn@wbkohnlaw.com